# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EDDIE STEWART, III** | **CIVIL ACTION** |
| **VERSUS** | **No. 17-7775** |
| **MARATHON PETROLEUM CO. LP, ET AL.** | **SECTION I** |

## ORDER & REASONS

Before the Court are two motions[1] to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2)—one filed by defendant Marathon Petroleum Company LP ("Marathon") and the other by defendants Polar Corporation and Polar Tank Trailer, LLC ("Polar Tank Trailer") (collectively, "the Polar defendants"). For the following reasons, both motions are granted.

### I.

Plaintiff Eddie Stewart, III ("Stewart"), a resident of Louisiana, is a commercial truck driver.[2] On August 10, 2016, Stewart was assigned a job transporting a chemical from Michigan to the Gulf Coast using a tanker-trailer ("the trailer") manufactured by the Polar defendants.[3] On August 11, pursuant to his superior's directions, Stewart arrived at Marathon's oil refinery in Detroit, where Marathon employees allegedly loaded the trailer with the incorrect chemical.[4] On Marathon personnel's instructions, Stewart left the refinery after the loading was

---

[1] R. Doc. Nos. 14, 33, 49.
[2] R. Doc. No. 1, at 3.
[3] *Id.* at 5.
[4] *Id.*

complete and continued on his route.[5] Shortly thereafter, the trailer exploded on the side of the interstate in Ohio, allegedly causing Stewart to suffer personal injuries.[6]

## II.

The Court may require a nonresident defendant to appear before it, but its jurisdictional power is restricted by constitutional and statutory bounds. "A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). Because the limits of Louisiana's long-arm statute are defined by the Fourteenth Amendment, the two inquiries become one, and the Court need only consider whether the constitutional requirements of due process have been met. *See Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 624 (5th Cir. 1999) (citation omitted); *see also* La. Rev. Stat. Ann. § 13:3201.

Those requirements permit a court to exercise jurisdiction over a nonresident defendant when (1) that defendant establishes "minimum contacts" with the forum state, thereby "purposefully avail[ing]" itself of that state's benefits and protections; and (2) exercising jurisdiction over that defendant does not offend "traditional notions of fairy play and substantial justice." *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). The connection

---

[5] *Id.* at 6.
[6] *Id.*

2

between the defendant's conduct and the forum state "must be such that he should reasonably anticipate being haled into court" there. *Id.*

The U.S. Supreme Court has divided personal jurisdiction into two types—specific or "conduct-linked" jurisdiction and general or "all-purpose" jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014); *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). The former depends on a connection between the forum state and the underlying controversy, permitting courts to exercise jurisdiction over a nonresident defendant when that defendant has "purposefully directed" his activities at the forum state *"and* the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp.*, 471 U.S. 462, 472 (1985) (emphasis added); *see also Goodyear Dunlop Tires Operations S.A. v. Brown*, 564 U.S. 915, 919 (2011).

Thus, specific jurisdiction is a claim-specific inquiry and involves cases in which the defendant's forum-related activities give rise to the facts that form the basis of the lawsuit. The Fifth Circuit has articulated the following analysis for determining whether specific jurisdiction over a nonresident defendant is proper:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014). If a plaintiff establishes the first two prongs, the burden of proof shifts to the defendant to show that exercising jurisdiction would be unfair or unreasonable. *Id.*

General jurisdiction, by contrast, is available "even if the nonresident defendant's contacts with the forum state are not directly related to the cause of action." *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994). Those contacts must, however, be "so continuous and systematic as to render [the defendant] essentially at home in the forum State." *Goodyear*, 564 at 919. A corporate defendant is typically considered "at home" in the state where it is incorporated or has its principal place of business. *Daimler*, 571 U.S. at 137. General jurisdiction is not limited to these forums, but it is an "exceptional case" when "a corporate defendant's operations in another forum may be so substantial and of such a nature as to render the corporation at home in that State." *BNSF Ry. Co. v. Tyrrell*, 137 S.Ct. 1549, 1558 (2017) (quoting *Daimler*, 571 U.S. at 139 n.19). The inquiry's focus is not solely the "magnitude of the defendant's in-state contacts." *Id.* at 1559. A corporation's activities must be evaluated "in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them.*" Daimler*, 571 U.S. at 139 n.20.

When a nonresident defendant files a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), "the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). If a district court rules on the motion without holding an evidentiary hearing, as the Court does here,[7] the plaintiff may meet his burden by

---

[7] None of the parties requested an evidentiary hearing, although the Court did require the parties to submit supplemental briefing on the personal jurisdiction issue.

4

establishing a *prima facie* case showing that personal jurisdiction is proper. *Wilson*, 20 F.3d at 648.[8] "The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985). The Court must accept all of the plaintiff's uncontroverted allegations as true and construe all disputed facts in the plaintiff's favor. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). The *prima facie* burden does not, however, "require the court to credit conclusory allegations, even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

## III.

The Court first addresses whether it has personal jurisdiction over the Polar defendants. According to Stewart, the Polar defendants are subject to the Court's jurisdiction under a stream of commerce theory.[9] Stewart no longer asserts that the

---

An evidentiary hearing is unnecessary because there is sufficient information in the record to resolve the pending motions before the Court.

[8] If the Court had held an evidentiary hearing, Stewart would have to "demonstrate that the exercise of jurisdiction over the defendants is proper by a preponderance of the evidence." *Irvin v. S. Snow Mfg., Inc.*, 517 F. App'x 229, 230 (5th Cir. 2013).

[9] R. Doc. No. 99, at 7–10. In their supplemental brief, the Polar defendants stress that they are distinct legal entities. R. Doc. No. 97, at 7. For the reasons discussed herein, the Court concludes that it does not have personal jurisdiction over Polar Tank Trailer, which has significantly more contacts with Louisiana than Polar Corporation. If the Court does not have jurisdiction over Polar Tank Trailer, it certainly does not have jurisdiction over Polar Corporation. As the Polar defendants note, there is no evidence to show that Polar Corporation has any independent connections to Louisiana whatsoever. R. Doc. No. 102. Regardless, because treating them collectively does not change the jurisdictional outcome, the Court will generally refer to the two Polar defendants as one entity for the sake of clarity.

Court has general jurisdiction over the Polar defendants,[10] and the U.S. Supreme Court has restricted the stream of commerce theory's application to specific jurisdiction. *See Goodyear*, 564 U.S. at 926–27 ("Flow of a manufacturer's products into the forum, we have explained, may bolster an affiliation germane to *specific* jurisdiction.").[11] The Court will therefore only examine whether it can exercise specific jurisdiction over the Polar defendants.

The circuits are split on the stream of commerce theory's reach after the U.S. Supreme Court's decision in *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*,[12] but the Fifth Circuit has adopted "Justice Brennan's more expansive view." *In re DePuy Orthopaedics Inc.*, 888 F.3d 753, 778 (5th Cir. 2018) (citation omitted). Under this approach, the first prong of the specific jurisdiction analysis is satisfied if a court determines that the defendant "delivered the product . . . 'into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state.'" *Irvin*, 517 F. App'x at 779 (citing *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013)).

Applying the Fifth Circuit's analysis, the Court must first determine whether the Polar defendants established minimum contacts with Louisiana by purposefully directing their activities toward Louisiana or purposefully availing themselves of the

---

[10] R. Doc. No. 98. The Court considers this argument waived.
[11] The stream of commerce theory "recognizes that a defendant may purposefully avail itself of the protection of a state's laws—and thereby subject itself to personal jurisdiction—by sending its goods rather than its agents into the forum." *In re DePuy*, 888 F.3d at 778 (internal quotations and citation omitted).
[12] *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102 (1987).

6

privileges of conducting activities here. Stewart argues that, under a stream of commerce theory, the Polar defendants have sufficient contacts with Louisiana to subject them to the Court's jurisdiction.[13] In response, the Polar defendants contend that the trailer at issue left the stream of commerce after Quality Carriers, Inc. ("Quality Carriers") purchased it—before it was garaged in Louisiana and before the date of the explosion.[14] They argue that, as a result, the stream of commerce theory is inapplicable.[15] In support of their argument, the Polar defendants rely on *Seiferth v. Helicopteros Atuneros, Inc.*, in which the Fifth Circuit observed, "Once a product has reached the end of the stream and is purchased, a consumer's unilateral decision to take the product to a distant state, without more, is insufficient to confer personal jurisdiction over the manufacturer or distributor." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 273 (5th Cir. 2006).

The Court agrees with the Polar defendants. Under *Seiferth*, the trailer "reached the end of the stream" when Quality Carriers bought it. *Id.* The fact that Quality Carriers later had the trailer transported to Louisiana does not allow the Court to exercise personal jurisdiction over the Polar defendants.

---

[13] R. Doc. No. 99, at 10.
[14] R. Doc. No. 102, at 5–6. As stated herein, Quality Carriers, a defendant in this case, is a Florida-based company that purchased the trailer from the Polar defendants and had it shipped to Florida. R. Doc. No. 102, at 1. Quality Carriers later moved the trailer to Louisiana and provided Stewart with the trailer so he could drive the route from Louisiana to Michigan and back—the route Stewart was driving when the explosion occurred. R. Doc. No. 99, at 8.
[15] R. Doc. No. 102, at 6.

7

Even assuming, however, that the trailer remained in the stream of commerce after its initial purchase, the Court would still not have personal jurisdiction over the Polar defendants. In *Irvin v. Southern Snow Manufacturing, Inc.*, the defendant was a Louisiana-based manufacturer of shaved-ice machines, one of which injured the plaintiff, a Mississippi resident, in Mississippi. *Irvin v. S. Snow Mfg., Inc.*, 517 F. App'x at 230. Like the Polar defendants, the defendant in *Irvin* had no direct connection with the plaintiff; rather, the defendant had sold the machine to a third party in Louisiana, who then sold it to the plaintiff in Mississippi. *Id.* The plaintiff relied on the defendant's business contacts with a number of other Mississippi residents to establish the defendant's "minimum contacts" there under a stream of commerce theory. *Id.* at 231.

While the Court did not address whether the machine that had caused the plaintiff's injuries exited the stream of commerce after the initial sale, it "assumed without deciding that . . . [the defendant] purposefully availed itself of the privilege of doing business in Mississippi by making a substantial percentage of its overall sales to customers in that state." *Id.* at 232. The Court then concluded that—despite this assumption—jurisdiction was improper because the plaintiff could not show a sufficient "nexus" between the defendant's contacts with Mississippi and the machine that injured her. *Id.* Without that nexus, she could not satisfy the second prong of the specific jurisdiction inquiry.

Stewart's stream of commerce argument is similar to the one the plaintiff made in *Irvin*. He contends that the Polar defendants' contacts with Louisiana—which are

8

unrelated to the accident forming the basis of his complaint— suffice to subject them to the Court's jurisdiction. Polar Tank Trailer was certified to do business in Louisiana until early 2017 and, thus, at the time of the accident.[16] Additionally, the Polar defendants employ a registered sales agent whose territory includes Louisiana, and they knew some of the trailers they manufactured and sold were registered in Louisiana. [17] Nonetheless, like the plaintiff in *Irvin*, Stewart is unable to satisfy the second prong of the test for specific jurisdiction, which requires that the controversy "arise out of or relate to" the Polar defendants' activity in Louisiana. *See Monkton*, 768 F.3d at 432; *see also Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 472 (5th Cir. 2006) ("[I]t is not enough to satisfy due process that [a defendant] has some 'minimum contacts' with Louisiana."). For jurisdiction to be proper, "the defendant's *suit-related conduct* must create a substantial connection with the forum state." *Monkton*, 768 F.3d at 433 (emphasis added).

None of the Polar defendants' connections to Louisiana gave rise to the facts underlying this dispute. Stewart alleges the Polar defendants were negligent in their design and manufacture of the trailer.[18] However, the trailer was manufactured in Minnesota, so any alleged negligence relating to the manufacture or design of the trailer would have occurred there.[19] The Polar defendants sold the trailer to Quality Carriers, a Florida company.[20] Quality Carriers subsequently shipped the trailer to

---

[16] R. Doc No. 71-6.
[17] R. Doc. No. 71-7, at 1; R. Doc. No. 102, at 4.
[18] R. Doc. No. 1, at 12.
[19] R. Doc. No. 33-1, at 5.
[20] *Id.* at 1.

Florida—not Louisiana.[21] The point of sale was documented as Minnesota.[22] It was Quality Carriers that directed the trailer's route, which originated in Louisiana.[23] Finally, the eventual explosion that allegedly caused Stewart's injuries occurred in Ohio.[24]

Any of the Polar defendants' other contacts with Louisiana are too removed from the cause of action. Stewart indicates that Polar Corporation owns 100% of Polar Service Centers—a non-defendant that owns service facilities in Louisiana—but there is no record that any of the company's service centers worked on the trailer that exploded.[25] Neither the Polar defendants' prior certification to conduct business in

---

[21] R. Doc. No. 80, at 2.
[22] R. Doc. No. 33-1, at 2.
[23] R. Doc. No. 80, at 4. Stewart argues that the Polar defendants should not be allowed to avoid liability when their trailers cause injury somewhere other than where they are manufactured simply because the trailers are sold "free on board" ("FOB"). Selling a trailer FOB means that, once the trailer passes from the seller to the buyer, title to and liability for the goods transfers to the buyer.

First, an FOB contract term covers liability for the merchandise being transported, and Stewart is not seeking damages for lost or damaged goods. Furthermore, the issue currently before the Court is not whether the Polar defendants are liable for the explosion, but whether the Court may properly exercise jurisdiction over them. Even if the contract for sale of the trailer had not included an FOB term, the Polar defendants still would not have made direct contact with Louisiana because the buyer was not a Louisiana company, and the accident did not occur in Louisiana. Hence, the Court considers the FOB discussion irrelevant to the jurisdictional inquiry.

[24] R. Doc. No. 33-1, at 5; R. Doc. No. 80, at 2.
[25] R. Doc. No. 80, at 2. Even if one of the service centers had serviced the trailer involved in this case, the Polar defendants correctly note that Polar Service Centers, LLC's contacts with Louisiana cannot be imputed to Polar Corporation. *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999) ("Courts have long presumed the institutional independence of related corporations, such as parent and subsidiary, when determining if one corporation's contacts with a forum can be the basis of a related corporation's contacts.").

Louisiana nor Polar Tank Trailer, LLC's employment of a "South Central Regional Sales Manager" (whose territory covers Louisiana, along with six other states)[26] relate to the incident that forms the basis of Stewart's complaint. There is no evidence to suggest that any business the Polar defendants conducted in Louisiana, including any business coordinated by a Louisiana sales representative, resulted in Quality Carriers purchasing the trailer from the Polar defendants. These connections are simply "too attenuated to support personal jurisdiction." *Irvin*, 517 F. App'x at 232 (holding that the defendant, which sold its product to a consumer who later unilaterally transported it to the forum state, was not subject to the court's jurisdiction "based on an 'arose-out-of' theory").

The Court ultimately concludes that it cannot exercise jurisdiction over the Polar defendants. In addition to Stewart's failure to demonstrate that the Polar defendants had sufficient minimum contacts with Louisiana, Stewart has not demonstrated that "the litigation result[s] from alleged injuries that arise out of or relate to" the defendants' forum-related contacts. *Burger King*, 471 U.S. at 472; *see also ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 499–500 (5th Cir. 2012) (concluding that the defendants had "availed themselves" of the forum state's laws but nonetheless finding jurisdiction improper because "there is little nexus between the defendants' contacts . . . and the plaintiff's . . . claims").

Because Stewart is unable to show that his alleged injuries arise out of or relate to the Polar defendants' forum-related activity, Stewart has failed to establish

---

[26] R. Doc. No. 71-7.

a *prima facie* case supporting the Court's jurisdiction, and the Court need not determine whether exercising jurisdiction over the Polar defendants would be unfair or unreasonable. *See Eddy v. Printers House (P) Ltd.*, 627 F. App'x 323, 328 (5th Cir. 2015) ("[W]e do not . . . address whether the 'fair play and substantial justice' requirement has been satisfied, as the determination that the [defendant] lacked 'minimum contacts' with [the forum state] alone is sufficient to conclude that the district court could not exercise personal jurisdiction.").

## IV.

The Court now addresses whether it has personal jurisdiction over Marathon. "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 571 U.S. at 137. When the defendant is a corporation, the "paradigm forum for the exercise of general jurisdiction" is the forum "in which the corporation is fairly regarded as at home"—typically in the state where it is incorporated or has its principal place of business. *Id.* at 137. It is the "exceptional case" in which a corporation's operations in another forum "'may be so substantial and of such a nature as to render the corporation' subject to general jurisdiction 'in that State.'" *Whitener v. Pliva, Inc.*, 606 F. App'x 762, 765 (5th Cir. 2015) (quoting *Daimler*, 571 U.S. at 139 n.19). The standard is high: "It is . . . incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principle place of business." *Monkton*, 768 F.3d at 432.

To be subject to the Court's jurisdiction, Marathon must be "at home" in Louisiana or "its continuous and substantial contacts with [Louisiana] must be akin

to those of a local enterprise that actually is 'at home'" here. *Daimler*, 571 U.S. at 152. It is undisputed that Marathon is not "at home" in Louisiana in the traditional paradigm because it is incorporated in Delaware and its principal place of business is in Ohio.[27] The question is therefore whether Marathon's Louisiana operations are "so substantial and of such a nature" that Marathon may nonetheless be considered "essentially at home" in Louisiana. *Daimler*, 571 U.S. at 153.

On one end of the legal spectrum are cases in which the defendants' contacts with the forum are sparse and shallow and, thus, inadequate. For example, in *Ezell v. Medtronic plc*, the defendant—an Irish company called Medtronic plc ("Medtronic")—was sued in Louisiana over a products liability dispute. *Ezell v. Medtronic plc*, No. 3:17-CV-00796, 2018 WL 1100901, at *1, 5 (W.D. La. Feb. 6, 2018). Medtronic was not headquartered in Louisiana, had never been licensed to do business in Louisiana, had no registered agent for service of process in Louisiana, and had no property or mailing addresses in Louisiana. *Id.* at *5. As a result, the court concluded that it had no general jurisdiction over Medtronic. *Id.*

Perhaps less obvious was the Court's decision in *BNSF Railway Co. v. Tyrell*. In *BNSF*, the U.S. Supreme Court held that the defendant railroad company was not "essentially at home" in Montana despite its 2,000 miles of railroad track and over 2,000 workers there. *BNSF*, 137 S.Ct. at 1559. Put into perspective, these numbers represented about 6% of the defendant's total track mileage and less than 5% of its workforce, respectively. The Court found these contacts with Montana inadequate to

---

[27] R. Doc. No. 14-1, at 1.

13

warrant exercising general jurisdiction over the defendant with respect to claims unrelated to the defendant's business in Montana. *Id.* at 1554, 1559.

On the other end of the spectrum is *Perkins v. Benguet Consolidated Mining Co.*, the "textbook case of general jurisdiction." *Daimler*, 571 U.S. at 129. The *Perkins* defendant was a Philippine mining company, although the lawsuit was filed in Ohio. *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 438–39 (1952). The company's mining operations had come to a complete halt during the Japanese occupation of the Philippines during World War II, at which time the corporation's president moved his office to Ohio. *Id.* at 447–48. The Court held that the business the president conducted while in Ohio was so "continuous and systematic" that Ohio did not violate due process by exercising jurisdiction over the defendant-corporation. *Id.* at 448. The Court explained in a later opinion that general jurisdiction was present in *Perkins* because "Ohio was the corporation's principal, if temporary, place of business." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779 n.11 (1984).

Marathon's ties to Louisiana fall somewhere in between these two ends of the spectrum. Unlike the railroad company in *BNSF*—which the Court concluded operated somewhere between 6–10% of its business in the forum state—Marathon conducts significantly more of its operations in Louisiana. Between 2015 and 2017, Marathon reported that 30% of its crude oil refining capacity and 30% of its refinery-related tank storage capacity was located in Louisiana.[28] On the other hand,

---

[28] R. Doc. No. 93, at 2. The Court did not request and Marathon did not provide its figures for years before 2015. Additionally, all percentages discussed herein are approximations.

Marathon's contacts with Louisiana are not analogous to the defendant's ties to the forum state in *Perkins*. The *Perkins* defendant had moved its office into the forum state temporarily; it was conducting 100% of its business there. Marathon, by contrast, cannot be said to conduct 100% of its business in Louisiana because it conducts a significant percentage of its operations outside of Louisiana. For example, compared to its operations in the rest of the United States, in 2016—the year the trailer exploded—Marathon had 3% of its offices in Louisiana; 9% of its employees were based in Louisiana; and less than 3% of its terminals were located in Louisiana.[29]

Ultimately, while Marathon maintains significant business operations in Louisiana, Stewart has not established a *prime facie* case for jurisdiction. "[I]n-state business . . . does not suffice to permit the assertion of general jurisdiction over claims . . . unrelated to any activity occurring in [the forum state]." *BNSF*, 137 S.Ct. at 1559. For the Court to assert general jurisdiction over Marathon, it must be "essentially at home" in Louisiana. *Id.* at 1558 (citation omitted). Based on Stewart's uncontroverted allegations and construing all disputed facts in his favor, the Court cannot plausibly conclude that Marathon is essentially at home here. Stewart relies heavily on Marathon's refining capacity and total refinery-related tank storage capacity: the Louisiana percentages for both metrics are 30% and—with the exception of

---

[29] *Id.* at 3, 7.

Marathon's storage capacity in Texas—greater than the percentages for refining and refinery-related storage capacities outside of Louisiana.[30]

However, an analysis of Marathon's other business activities reveals that Marathon is not "essentially at home" here. Only 12% of Marathon's total refinery tanks are located in Louisiana.[31] In 2016, Marathon generated 5% of its revenue from sales in Louisiana.[32] Additionally, 9% of Marathon's workforce was located in Louisiana, less than 1% of Marathon-branded retail outlets were located in Louisiana, and Marathon did not directly advertise in Louisiana in 2016.[33] Finally, Marathon conducts 100% of its biofuel and ethanol production outside Louisiana.[34]

A comparison of Marathon's contacts with Louisiana with its business operations that occur elsewhere leads the Court to conclude that Marathon is not "essentially at home" here. Furthermore, as stated herein, Marathon is not incorporated in Louisiana, and its principal place of business is not in Louisiana. Therefore, the Court does not have general jurisdiction over Marathon in this case.

V.

Accordingly,

**IT IS ORDERED** that the Polar defendants' motion to dismiss is **GRANTED**, and Stewart's claims against the Polar defendants are **DISMISSED WITHOUT**

---

[30] *Id.* at 8; R. Doc. No. 78, at 8.
[31] R. Doc. No. 93, at 8.
[32] *Id.* at 8.
[33] *Id.* at 6–7; R. Doc. No. 78, at 11. There was media spillover into Louisiana, but Marathon estimates such spillover to account for less than 1% of its nationwide media purchases. *Id.*
[34] R. Doc. No. 93, at 4–5.

16

PREJUDICE.

**IT IS FURTHER ORDERED** that Marathon's motion to dismiss is **GRANTED**, and Stewart's claims against Marathon are **DISMISSED WITHOUT PREJUDICE**.

New Orleans, Louisiana, June 29, 2018.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**